UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

COREY S.,

                                  Plaintiff,

v.                                                                  8:20-CV-1112
                                                                                     (ML)

COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| SCHNEIDER & PALCSIK<br> *Counsel for Plaintiff*<br>57 Court Street<br>Plattsburgh, New York 12901 | MARK A. SCHNEIDER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br> *Counsel for Defendant*<br>J.F.K. Federal Building, Room 625<br>15 New Sudbury Street<br>Boston, Massachusetts 02203 | HUGH DUN RAPPAPORT, ESQ. |

**MIROSLAV LOVRIC**, United States Magistrate Judge

**MEMORANDUM-DECISION AND ORDER**

      Plaintiff Corey S. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for Supplemental Security Income ("SSI"). (Dkt. No. 1.) This case has proceeded in accordance with General Order 18 of this Court, which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Currently before the Court are Plaintiff's motion for judgment on the pleadings and Defendant's motion for

judgment on the pleadings. (Dkt. Nos. 15, 18.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and this case is remanded to the Social Security Administration ("SSA") for further administrative proceedings.

## I. PROCEDURAL HISTORY

On October 18, 2018, Plaintiff filed an application for SSI, alleging disability dating from October 1, 2016. (Administrative Transcript ("T.") 232-240.) His application was denied initially on February 19, 2019, and his request for reconsideration was denied on May 15, 2019. (T. 104-115.) Plaintiff then requested a hearing, where he and vocational expert ("VE") Renee B. Jubrey testified on January 21, 2020, before Administrative Law Judge ("ALJ") Asad M. Ba-Yunus. (T. 34-67.) The ALJ issued an unfavorable decision on January 28, 2020. (T. 12-33.) This became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on September 3, 2020. (T. 1-6.)

## II. GENERALLY APPLICABLE LAW

### A. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42

U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (Kahn, J.); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

B.	**Standard for Benefits**[1]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the

---

[1] The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

>claimant can perform given the claimant's residual functional
>capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

### III.  FACTS

As of the date of the ALJ's decision, Plaintiff was 30 years old. (T. 40, 232.) While a student, he was enrolled in special education classes. (T. 891, 934.) Plaintiff testified that he left school while in the ninth grade, but the administrative record indicates that he may have completed the tenth grade. (T. 42-43, 1008, 1132.) He has a very limited work history and reported that his longest period of employment lasted six months. (T. 395, 891.) He claimed that he was terminated from this position after a physical altercation with his supervisor. (T. 891.)

Plaintiff has received mental health treatment since childhood for a number of diagnosed impairments including attention deficit hyperactivity disorder ("ADHD"), anxiety, and bipolar disorder. (T. 50-51, 891-892, 982.) With regard to physical impairments, Plaintiff has experienced symptoms of hidradenitis suppurativa[2] ("HS") for more than ten years. (T. 417.) As a result of this condition, he has painful recurring cysts, most frequently on his legs and buttocks, that often require incision and draining. (T. 417, 803, 1048.) Plaintiff claims he developed a

---

[2] Hidradenitis suppurativa is a condition that causes small, painful lumps to form under the skin. The lumps usually develop in areas where your skin rubs together, such as the armpits, groin, buttocks and breasts. The lumps heal slowly, recur, and can lead to tunnels under the skin and scarring. The exact cause is not known, and the course of the disease is highly variable. https://www.mayoclinic.org/diseases-conditions/hidradenitis-suppurativa/symptoms-causes/syc-20352306

5

substance abuse disorder from the use of narcotic pain medication to treat this condition and an unrelated neck injury. (T. 50, 803, 891.) He has been in substance abuse treatment for several years, including counseling six days per week and a methadone maintenance program. (T. 46-47, 803-871, 1123.)

The record includes Plaintiff's treatment history. Rather than summarizing the records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

## IV.     THE ALJ'S DECISION

After finding that Plaintiff did not engage in substantial gainful activity ("SGA") after the amended alleged onset date of October 18, 2018, the ALJ found that Plaintiff had the following severe impairments: "ADHD, learning disorder, bipolar disorder, anxiety disorder, depressive disorder, and history of non-material substance abuse disorder." (T. 17-18.) The ALJ also considered Plaintiff's obesity, intermittent back pain, and history of headaches but found these physical impairments to be non-severe. (T. 18.)

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment. (T. 18-20.) At step four, the ALJ found that Plaintiff could perform a range of work at all exertional levels but with certain non-exertional limitations, all related to his mental impairments. (T. 20-24.) More specifically, the ALJ found that Plaintiff could "perform unskilled, simple, routine, repetitive tasks requiring occasional reminders, may have frequent interaction with supervisors, occasional interaction with coworkers, and brief/superficial interaction with the general public, and can tolerate minor changes to a routine work setting." (T. 20.)

In making the RFC determination, the ALJ stated that he considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 416.929" and Social Security Ruling ("SSR") 16-3p. (T. 20.) The ALJ further stated that he considered opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. § 416.920c. (*Id.*) The ALJ also considered Plaintiff's subjective complaints regarding pain, symptoms, and functional limitations raised during the hearing and in the overall administrative record and found them "not entirely consistent with the medical evidence and other evidence in the record." (T. 21.)

At step four, the ALJ found that Plaintiff has no past relevant work. (T. 24.) Relying on the VE testimony, the ALJ also found that there were jobs that existed in significant numbers in the national economy that Plaintiff can perform. (T. 24-25.) Accordingly, the ALJ found that Plaintiff was not disabled from his SSI application date of October 18, 2018, through the date of his decision. (T. 25-26.)

**V.     ISSUES IN CONTENTION**

Plaintiff raises the following arguments in support of his position that the ALJ's decision is not supported by substantial evidence:

1. The ALJ erred by not finding Plaintiff's HS and recurring cysts to be severe impairments at step two and compounded that error by not considering these impairments as part of the RFC determination. (Dkt. No. 15 at 20-21.)

2. The ALJ erred by failing to find that Plaintiff's mental impairments satisfied the Listings at step three. (Dkt. No. 15 at 21-25.)

3. The ALJ's step five determination is not supported by substantial evidence because he relied upon VE testimony that Plaintiff could perform jobs that exceeded Plaintiff's mental functional limitations. (Dkt. No. 15 at 25-26.)

Defendant contends that the ALJ's decision is supported by substantial evidence. (Dkt. No. 18 at 3-20.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is

granted and this case is remanded to the Social Security Administration ("SSA") for further administrative proceedings.

## VI. SEVERE IMPAIRMENT

### A. Legal Standards

The claimant bears the burden of presenting evidence establishing severity at step two of the disability analysis. *Rhondalee T. v. Berryhill*, 17-CV-1241, 2019 WL 1100267, at *5 (N.D.N.Y. Mar. 8, 2019) (Hummel, M.J.) (citing *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (Suddaby, J.)). A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c)), 416.920(c); *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a) (noting that an impairment is not severe at step two if it does not significantly limit a claimant's ability to do basic work activities).

The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include: (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). "Severity" is determined by the limitations imposed by an impairment, and not merely by its diagnosis. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe. *Monique Danielle W. v. Comm'r of Soc. Sec.*, 18-CV-0184, 2019 WL 2358529, at *4 (N.D.N.Y. June 4, 2019) (Hurd, J.) (quoting *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012) (Kahn, J.)).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Mark K. v. Comm'r of Soc. Sec. Admin.*, 18-CV-0627, 2019 WL 4757381, at *1 (N.D.N.Y. Sept. 30, 2019) (Sharpe, J.) (quoting *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999)). Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a severe impairment . . . ." Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (1985). However, a combination of "slight abnormalities," having no more a minimal effect on plaintiff's ability to work, will not be considered severe. *Id*. The ALJ must assess the impact of the combination of impairments, rather than assessing the contribution of each impairment to the restriction of activity separately, as if each impairment existed alone. *Id*.

The step two analysis "may do no more than screen out de minimis claims." *Vogt on behalf of Vogt v. Comm'r of Soc. Sec.*, 18-CV-0231, 2019 WL 4415277, at *4 (W.D.N.Y. Sept. 16, 2019) (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). If the disability claim rises above a *de minimis* level, then the ALJ must undertake the remaining analysis of the claim at step three through step five. *Dixon*, 54 F.3d at 1030.

Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, 10-CV-0537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (D'Agostino, J.) (citing *Kemp v. Comm'r of Soc. Sec.*, 10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011) (Baxter, M.J.)). This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any

impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

### B. Application

Plaintiff contends that remand is necessary because his diagnosed HS and recurring cysts caused significant physical pain and thus the ALJ should have considered them to be a severe impairment at step two and accounted for the resulting functional limitations in his RFC determination. (Dkt. No. 15, at 20-21.) The Court agrees that these medically determinable physical impairments should have been considered at step two and as part of the RFC determination, and that remand for further administrative proceedings is necessary.

The Commissioner contends that "the ALJ effectively found at step two that Plaintiff's physical impairments (which include his HS) were not severe." (Dkt. No. 18, at 4.) The Commissioner uses the word "effectively" because the ALJ never discussed Plaintiff's HS or recurring cysts at any point in his decision. (T. 12-33.) The only physical impairments referenced in the ALJ's step two analysis are Plaintiff's obesity, intermittent back pain, and reported history of headaches. (T. 18.)

In concluding that Plaintiff has no severe physical impairments, the ALJ cited Dr. Nader Wassef's consultative opinion that Plaintiff showed no evidence of physical limitations during his examination on January 23, 2019, along with select medical records identifying no physical impairments. (T. 867, 871, 888.) This limited analysis was inadequate at step two because it ignored or overlooked evidence related to Plaintiff's HS and other skin conditions.

It is certainly true that an ALJ is entitled to rely upon the opinions of consultative examiners such as Dr. Wassef, "since such consultants are deemed to be qualified experts in the field of social security disability." *Gamble v. Comm'r of Soc. Sec.*, 15-CV-0352, 2016 WL

4491710, at *5 (N.D.N.Y. July 25, 2016) (Carter, M.J.) (quoting *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) (McAvoy, J.)), adopted by 2016 WL 4487780 (N.D.N.Y. Aug. 25, 2016) (Suddaby, C.J.).  However, it is equally true that "consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day." *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990) (citation omitted); *Graves v. Astrue*, 12-CV-0048, 2013 WL 4779193, at *12 (N.D.N.Y. Sept. 5, 2013) (McAvoy, J.) (collecting cases).

Although Dr. Wassef did examine Plaintiff's skin, there is no indication that the consulting physician was aware of Plaintiff's diagnosed HS or that Plaintiff was experiencing active symptoms in January 2019, when the examination occurred.[3]  (T. 887.)  Plaintiff, who has been documented as a poor medical historian[4] due to his severe mental impairments, did not mention the impairment to Dr. Wassef.  (T. 265-266, 886.)  In addition, when Plaintiff subsequently sought treatment for HS in May 2019, he told his physician that he had not experienced a significant abscess "in a couple of years."  (T. 1051.)

The ALJ's discussion of Plaintiff's medical records at step two is likewise inadequate because it omits notes from the same time period showing treatment for cysts and abscesses related to HS.  (T. 1048, 1051.)  In addition, two of the treatment notes cited by the ALJ are

---

[3] The Commissioner's regulations recognize that HS and other chronic skin conditions are frequently characterized by symptom flareups of varying duration.  *See* 20 C.F.R. Part 404, Subpart P, App'x 1, §§ 8.00, 8.06.

[4] When Plaintiff was interviewed by a Social Security representative on April 10, 2015, in connection with his application for benefits, Plaintiff did not "give any information unless he was asked" and appeared "confused when asked questions." (T. 265.)

11

related to his methadone treatment and suggest that the examination of Plaintiff's skin was limited to a check of his arms for evidence of intravenous drug use.  (T. 867, 871.)

An ALJ need not "reconcile explicitly every shred of medical testimony."  *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)).  However, an ALJ cannot ignore evidence strongly suggestive of severe physical impairments, such as the medical records and Plaintiff's testimony regarding the functional limitations imposed by Plaintiff's HS and recurring cysts on his ability to perform basic work activities.  *See Klemens v. Berryhill*, 703 F. App'x 35, 36 (2d Cir. 2017) (quoting *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010)) ("Among the ALJ's legal obligations is the duty to adequately explain his reasoning in making findings on which his ultimate decision rests, and in doing so he must address all pertinent evidence."); *Vogt o/b/o Vogt v. Comm'r of Soc. Sec.*, 18-CV-0231, 2019 WL 4415277, at *5 (W.D.N.Y. Sept. 16, 2019) (remanding where ALJ's decision failed to address medical and testimonial evidence of Plaintiff's hand atrophy); *see also Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016) (ALJs must "confront the evidence in [a claimant's] favor and explain why it was rejected before concluding that [his] impairments [do] not impose more than a minimal limitation on [his] ability to perform basic work tasks.")

"Plaintiff's burden at step two is not heavy." *Marcus L. v. Comm'r of Soc. Sec.*, 20-CV-0167, 2021 WL 4204981, at *3 (W.D.N.Y. Sept. 16, 2021).  When an impairment is chronic or ongoing, "[t]he claimant can satisfy this standard with evidence from before or after the relevant time period." *Matthew P. v. Comm'r of Soc. Sec.*, 20-CV-1586, 2021 WL 5629070, at *3 (N.D.N.Y. Dec. 1, 2021) (Dancks, M.J.) (citing *Lake v. Colvin*, 14-CV-1394, 2016 WL 2757750, at *7 (N.D.N.Y. May 12, 2016) (Hurd, J.); *see also Jeffrey G. v. Comm'r of Soc. Sec.*, 20-CV-1016, 2021 WL 4844146, at *6 (N.D.N.Y. Oct. 18, 2021) (Baxter, M.J.) (finding evidence of

plaintiff's condition prior to his application date was not relevant to the ALJ's inquiry at step two, to the extent it did not indicate an ongoing impairment.)

In this case, Plaintiff's medical records establish that, at the time of the application for benefits relevant to this case, he had suffered recurring cysts and subcutaneous abscesses on several areas of his body, including the thighs and buttocks[5], for at least a decade. (T. 417, 803.) Most of these have been attributable to his diagnosed HS. (T. 418, 442.) Treatment has included multiple surgeries requiring anesthesia, as well as outpatient procedures to drain and pack the wound. (T. 417, 434, 442-443, 473.) He sought medical treatment for the condition as recently as August 12, 2019, although his physician concluded drainage was not necessary at that time. (T. 1048, 1051.)

Plaintiff testified that the cysts reoccur about every two months, and typically last more than a month. (T. 51.) He also testified that even after his physicians lance and pack the wound, he will still be hurting for "two to three weeks" causing him to "be laid up" for "almost a month, and then I'll be good. And then they'll, they'll come back." (T. 52.) Plaintiff described the cysts as causing "a lot of difficulties" and "a lot of pain" that frequently made it difficult to sit down for extended periods and caused "a hard time being in my own skin." (T. 52, 58-60.) Plaintiff, who receives regular methadone treatment and drug rehabilitation counseling, testified that he became addicted to narcotics that had been originally prescribed to control the pain from these cysts. (T. 50.)

On its face, Plaintiff appears to have satisfied his burden at step two by presenting evidence that his HS and recurring cysts required regular medical treatment, including surgeries,

---

[5] During a consultative examination, Plaintiff also reported a cyst on his left eye that needed to be lanced. (T. 496).

13

was not controlled by medication, and resulted in significant pain that interfered with basic work activities such as sitting and remaining on task. Of course, it is well settled that failure to find an impairment severe at step two is harmless error if the ALJ incorporates those impairments in the later steps of the sequential analysis. *See Pascal T. v. Berryhill*, 17-CV-01347, 2019 WL 316009, at *7 (N.D.N.Y. Jan. 24, 2019) (D'Agostino, J.) (collecting cases); *see O'Connell v. Colvin*, 558 F. App'x 63, 65 (2d Cir. Mar. 11, 2014) (summary order) (finding any error by ALJ in excluding plaintiff's knee injury as a severe impairment was harmless because ALJ identified other severe impairments and considered the knee injury in subsequent steps). On a related note, even if this Court were to hold that substantial evidence supports the ALJ's finding that Plaintiff's HS and recurring cysts were non-severe, remand is required if the ALJ failed to account for Plaintiff's HS and recurring cysts when determining the RFC, because an RFC determination must account for limitations imposed by both severe and non-severe impairments. *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(2) and 20 C.F.R. § 416.945(a)(2)).

Accordingly, whether or not the ALJ should have found Plaintiff's HS and recurring cysts to be a severe impairment at step two, the crucial inquiry is whether the ALJ considered these particular impairments and their effect on his ability to work during the balance of the sequential evaluation process. *See Zenzel*, 993 F. Supp. 2d at 153-154 (remanding where it was unclear if ALJ had considered the limiting effects of Plaintiff's headaches once she found them to be a non-severe impairment). In this case, the only mention of Plaintiff's physical impairments in the RFC determination is the following paragraph:

> Physical opinions, specifically those of Dr. Wassef (Exhibit 24F), Dr. Vazquez Gonzalez (Exhibit 6A), and Dr. Reynolds (Exhibit 8A), which indicated no physical limitations, are considered fairly and reasonably

>    persuasive, as the claimant's primary complaints and treatment has been
>    for mental and psychiatric issues.

(T. 23.)

The Court has already addressed the deficiency in relying on Dr. Wassef's consultative examination from January 2019. A similar defect arises with the ALJ's reliance on the opinions of non-examining medical consultants Dr. Vazquez-Gonzalez and Dr. Reynolds. These medical consultants reviewed Plaintiff's then-current medical records on January 28, 2019, and May 6, 2019, respectively, and each noted Plaintiff's prior treatment for skin abscesses. (T. 103, 116.) However, neither physician had the benefit of Plaintiff's subsequent medical records showing active treatment for HS. (T. 1048, 1051.) It is thus evident from the ALJ's limited discussion of Plaintiff's physical impairments in his RFC analysis that the ALJ never considered any potential functional limitations associated with Plaintiff's HS and recurring cysts.

Because the single paragraph referencing the consultive physician's opinions is the only discussion of Plaintiff's physical impairments in the RFC, the Court cannot find that the ALJ's error at step two is harmless. *See Zenzel* 993 F. Supp. 2d at 153-154 (finding of harmless error is appropriate only when it is clear that the ALJ considered the claimant's relevant impairments and their effect on his ability to work during the balance of the sequential evaluation process). On remand, the ALJ should further develop the record concerning the effect of Plaintiff's HS and recurring cysts on his ability to perform basic work activities by, for example, re-contacting his treating physicians for an opinion in this regard. *Compare Clarke v. Saul*, 20-CV-2377, 2021 WL 2402317, at *13 (S.D.N.Y. May 26, 2021) (finding ALJ's inquiry into Plaintiff's HS should have considered the frequency of claimant's HS flareups, the length of time it took her lesions to heal, and the impact on Plaintiff's quality of life), *with House v. Comm'r of Soc. Sec.*, 09-CV-0913, 2012 WL 1029657, at *4 (N.D.N.Y. Feb. 29, 2012) (Bianchini, M.J.) (ALJ had substantial

evidence to find plaintiff's hidradenitis suppurativa was nonsevere where Plaintiff had suffered from the condition for a number of years prior to the onset date and been able to maintain full-time or part-time employment, and no provider identified any impact on her ability to perform basic work activities).

Because the step two determination may impact the subsequent steps of the sequential evaluation, including the hypothetical questions presented to the VE, the Court declines to address Plaintiff's remaining arguments. *See, e.g., Bell v. Colvin*, 15-CV-1160, 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (Kahn, J.) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" after the Court had already determined remand was warranted); *Morales v. Colvin*, 13-CV-6844, 2015 WL 2137776, at *28 (S.D.N.Y. May 4, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is **DENIED**; and it is further

**ORDERED** that the matter is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for further proceedings consistent with this Memorandum-Decision and Order.

Dated: March 21, 2022
      Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge